IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAMIE SAUNDERS,<br><br>Defendant. | CRIMINAL NO. RDB-23-246 |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by undersigned counsel, submits its sentencing memorandum in advance of the sentencing hearing in the above-captioned matter, currently scheduled for Wednesday, October 23, 2024, at 11:00 a.m. Ramie Saunders ("Defendant") pled guilty to count one of the indictment in this case, charging him with possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). As set forth more fully below, the Government requests that the Court sentence the Defendant to 72 months of incarceration to the Bureau of Prisons ("BOP").

### SENTENCING GUIDELINES

The Presentence Investigations Report ("PSR") found the Defendant's base offense level to be 22 based on United States Sentencing Guidelines ("USSG") §§ 2K2.1(a)(4)(A) & (b)(4)(A). The PSR accurately reflects a criminal history category of VI based on fifteen points. Additionally, the Defendant accepted responsibility for his misconduct and accordingly the Government does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to USSG § 3E1.1(a). The Government also anticipates making a motion at sentencing pursuant to USSG § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of

the Defendant's intention to enter a plea of guilty. Therefore, the PSR found the adjusted offense level to be 19. The applicable guideline range for this offense level and criminal history category is 63 to 78 months. A sentence of 72 months is appropriate under the factors set forth in 18 U.S.C. § 3553(a).

## FACTORS SET FORTH IN 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), a sentencing court "shall impose a sentence sufficient, but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). The sentencing court should consider various factors, including (among other things)[1]:

- the nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. §3553(a)(1));

- the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; "to protect the public from further crimes of the defendant"; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" (18 U.S.C. § 3553(a)(2));

- the applicable guidelines level ((18 U.S.C. § 3553(a)(4)); and

- the need to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (18 U.S.C. § 3553(a)(6)).

In this case, the § 3553(a) factors favor a sentence of 72 months' imprisonment. The

---

1   The Government has not copied the entirety of § 3553(a) into this memorandum. The portions of the statute cited herein are the portions most relevant to this sentencing.

˜2˜

Government will address certain factors in the following sections.

    **A.**    **Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense (18 U.S.C. § 3553(a)(1), (a)(2)(A)).**

The crime is serious. The Defendant was waiving a stolen gun around in a residential neighborhood near the 9500 block of Liberty Road, near Pikeswood Drive, in Baltimore County, Maryland. The Defendant disputes this claim, but the 911 caller was very specific. The caller stated that they were at the entry road to the Carriage Hill Apartments and saw the Defendant walking around waiving a gun. The caller was sitting in the car with the caller's family and saw the Defendant "whipping out a gun" as he walked by. The caller provided a description of the Defendant to the operator and further stated "like, he literally pulled the gun out."

The Defendant may argue that even if he were to concede that he brandished a firearm at no one in particular, the offense is "non-violent." That is true, in a technical, categorical sense. And the fact that the Defendant did not injure any civilians, or himself, or the arresting officer is a factor in his favor. At the same time, however, writing off the Defendant's crime as "non-violent" is reductive and ignores much of the crime's substance. The crime was violent in the sense that the Defendant was recklessly waving around a loaded stolen firearm in a neighborhood that could have resulted in people being hurt or killed.

Sometimes crimes like this one are incorrectly referred to as "victimless." The reality is that there *were* victims in this case. The residents of the Carriage Hill Apartments and the surrounding area are victims who, no doubt, do not want armed violent felons waiving guns around in their neighborhood. The owner of the stolen firearm is a victim. The sentence should take into consideration the impact on those individuals and communities. We should be mindful of the

experience of families impacted by gun violence and by the cost inflicted on communities due to illegal gun trafficking.

This is a case about the Defendant's choices. This is not a case about something that happened *to* the Defendant. This is not a "situation" in which he found himself or some unavoidable event in which he was trapped. The Defendant made choices that led to the charges here. He chose to illegally carry a firearm and openly display it in public. The Defendant's choices made this case. The sentence should reflect those choices.

Although the Defendant has taken responsibility for his actions, there is no doubt that his conduct was obviously dangerous. The Defendant exposed himself and the community to immeasurable harm. Accordingly, a total sentence of 72 months imprisonment is warranted and sufficient. The Government's recommendation would serve several § 3553(a) factors. It would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. 18 U.S.C. § 3553(a)(2).

**B.      The History and Characteristics of the Offender (18 U.S.C. § 3553(a)(1))**

The Defendant's criminal history prior to the instant offense paints a dangerous and discouraging picture to say the least. He was found to have the highest criminal history category of VI based on fifteen points. His past shows that he is no newcomer to guns or violence. In short, during the two decades preceding the offense, the Defendant was engaged in a stream of illegal activity, including gun violence. As the instant case demonstrates, the Defendant's path was still heading in that direction. Fortunately for him, and for others in the community, police intervened before real tragedy struck.

The Defendant's criminal history started as a juvenile. Between the ages of fourteen and

seventeen, he was arrested <u>nineteen times</u> and committed to the Department of Juvenile Services ("DJS") four times. Despite the Defendant being found delinquent throughout his teenage years and in desperate need of services and supervision, DJS was unable to correct the Defendant's behavior.

While the Defendant was simultaneously in the juvenile justice system, he was committing offenses at age sixteen in the adult criminal justice system, including illegal possession of a firearm and assault. By age eighteen, the Defendant was convicted of three drug offenses that year alone.

At age nineteen, the Defendant held a man captive for five hours before shooting him several times in the chest and left arm. The Defendant was sentenced to life imprisonment suspending all but fifteen years after pleading guilty to attempted first-degree murder and use of a handgun in committing a crime of violence.

The Defendant has been arrested some <u>37 times</u> between the ages of fifteen and 35 when he was arrested on the instant case. His prior record mentioned thus far is atrocious, but just as concerning is his inability to obey the law while under supervision and even while incarcerated. First, the Defendant has violated supervised probation or parole every single time he has been afforded the opportunity. In 2004, he was convicted of second-degree assault, which violated his probation in his 2003 firearm case. In 2005, his three drug convictions violated his probation in his 2004 second-degree assault case. In 2020, while on parole for his attempted first-degree murder conviction, he was convicted of two counts of second-degree assault. The Defendant's performance on community supervision has been abysmal to say the least.

What is even more troubling is the fact that the Defendant continues to break the law <u>even while incarcerated</u>. While the Defendant was serving his sentence for attempted first-degree

murder, he incurred two more criminal convictions. First, in 2015, he received a 90-day sentence for possessing contraband while incarcerated. Later that same year, he received another 90-day sentence for making a false statement to an officer while incarcerated.

While on parole for his attempted first-degree murder sentence, the Defendant assaulted at least two victims and police officers in January 2020. The Defendant was wholly uncooperative with police and threatened them during the arrest. The Defendant was given a suspended sentence and placed on <u>unsupervised</u> probation despite his history of desperately needing incarceration and supervision. It should come as no surprise that the Defendant is still a dangerous person, committing dangerous crimes, at 35 years old.

Clearly the Defendant's past reflects one of a recidivist nature and a particularly violent one at that, unchallenged by any prior period of incarceration or supervision. As such, the sentence imposed in this case should reflect the Defendant's resistance to adapt to being a law-abiding citizen. Taking into consideration the Defendant's background, a sentence of 72 months is necessary, rather than the Defendant's recommendation.

First, a lower sentence would place too much emphasis on one or two § 3553(a) factors. The Defendant will likely focus on any accomplishments and improvements while incarcerated, his children and extended family, growing up with an abusive stepfather, struggles with mental health and substance abuse, and on the unlikelihood that he will engage in criminal conduct in the future. However, those are not the only factors at issue here. The Defendant's recommendation does not reflect the seriousness of the offense, the need to send a reasonable message of general deterrence, the need to promote respect for the law, to provide just punishment, or the need to avoid unwarranted disparities with similarly situated defendants.

Second, even focusing on those § 3553(a) factors, there are aspects of the Defendant's history and characteristics that clearly reflect a need to further protect the community. The facts of this case and the Defendant's criminal history are matters of grave concern in that regard. Unfortunately, the Defendant's criminal record during the years preceding the instant offense suggest the need for a substantial sentence.

    **C.**    **The Purposes of Sentencing Including the Need to Send a Reasonable Message of General Deterrence (18 U.S.C. § 3553(a)(2)).**

The Defendant's recommended sentence would not send an appropriate message to other potential offenders. Such a sentence would be invariably cited by other defendants seeking minimal punishment based on post-offense rehabilitation. For good or ill, it has become a common aspect of sentencing in this District for defendants to cite to individual other cases (in sentencing contexts and in compassionate release contexts) in support of comparatively lower sentences. To some degree, every sentencing has become a measuring stick for every other sentencing despite the fact that every case is different. When the Government is seen as acceding to or not opposing sentences that do not send a reasonable message of general deterrence, the perceived precedential value becomes even stronger. In this respect, a 72-month sentence will send a message to other offenders as a measure of what is appropriate punishment. A lower sentence fails to accomplish that goal. The facts of this case and the Defendant's record support the Government's recommendation.

    **D.**    **An Upward Variance is Warranted Pursuant to the Above Factors at 18 U.S.C. § 3553(a)**

The Defendant's guidelines range in the plea agreement does not remotely reflect a just

sentence based on his conduct in this case and the violent offenses he has committed. Accordingly, sentencing him within those guidelines would only promote sentencing disparity. The PSR includes Judiciary Sentencing Information for the last five fiscal years. In this case, USPO included data based on defendants found to be a 13 and VI and a 19 and VI, to account for sentencing disparity. ECF No. 34 at 29.

The sentencing data in the PSR in the first paragraph on page 29 found that from FY2019 through FY2023, 34 to 35 months was the median and average sentence respectively for defendants with a §2K2.1 base offense level of 13 and a criminal history category of VI. Contrast that with the sentencing data in the PSR in the second paragraph on page 29. That data shows that from FY2019 through FY2023, 61 to 63 months was the median and average sentence respectively for defendants with a §2K2.1 base offense level of 19 and a criminal history category of VI. The Defendant in this case is deserving of a sentence higher than both of those, but the second dataset is much more reflective of this Defendant given the seriousness of the offense and his history and characteristics. A sentence of 72 months, while above the median and average, is warranted based on the Defendant's history and characteristics. The average defendant in the second dataset, while still a criminal history category VI, is less likely to have a life offense in their history and as many convictions for crimes of violence as this Defendant. Therefore, a sentence above that median and average is warranted and USPO has identified precisely zero evidence that would warrant a downward departure from the guidelines in the PSR. ECF No. 34 at p. 23, ¶ 106.

The Defendant's recommend sentence would only increase sentencing disparity. The Defendant wants the Court to treat this case as similar to the cases in the provided BOL 13, CHC VI dataset in paragraph one. A sentence at or below those guidelines would impose a massive

injustice in sentencing disparity based on the nature of the Defendant's crimes and his history and characteristics. This is not a similar case to that dataset. This is not a similar defendant to that dataset. That dataset grossly underrepresents the seriousness of this offense and the history and characteristics of this Defendant. Therefore, a 72-month sentence is the fair and just sentence here to avoid sentencing disparity and comply with the sentencing factors.

## CONCLUSION

This is the Defendant's seventh serious conviction in which the Government is aware. The Defendant, even at 35 years of age when he committed this crime, has failed to change his ways. No prior term of incarceration or period of parole or probation has changed the path of the Defendant. A sentence of 72 months of incarceration to the BOP is sufficient, but not greater than necessary to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a).

Respectfully submitted,

Erek L. Barron
United States Attorney

By:_____/s/_____
James I. Hammond
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2024, a copy of the foregoing was sent by ECF service to Christina Wong, Esq., counsel for the Defendant.

_____/s/_____
James I. Hammond
Assistant United States Attorney